[Civ. No. 24648. Second Dist., Div. One. Nov. 16, 1960.]

JOSEPH M. SHAW, Appellant, v. EMPIRE SAVINGS
 AND LOAN ASSOCIATION (a Corporation) et al.,
 Respondents.

Robert B. Hudson, Stephen H. Suffin and Simon Miller for Appellant.

Jack Levine, Swerdlow, Glikbarg & Nicholas, Harry B. Swerdlow and Irving A. Shimer for Respondents.

LILLIE, J.—To plaintiff's fourth amended complaint in his action for declaratory and other relief, defendants interposed a demurrer. From the judgment of dismissal following the order sustaining the demurrer without leave to amend, plaintiff appeals.

The fourth amended complaint, as with three of its predecessors, was in two counts, the third amended complaint being for declaratory relief only. The first cause of action alleged that plaintiff was and is a stockholder of Empire Savings and Loan, being the record owner of 50 shares of its capital stock; that on September 1, 1957, defendant Oschin offered to purchase from Empire's stockholders, at a price of $250 per share, all shares (but not less than 51 per cent) of the Empire stock outstanding, and that pursuant to such offer he (Oschin) did acquire 51 per cent of said stock; that by reason of the foregoing purchase of 51 per cent of its capital stock, Oschin became and was thereafter Empire's majority stockholder, and that a majority of Empire's board of directors (including the individually named defendants) thereby became subject to Oschin's control; on information and belief, that the bylaws of Empire at the time in question provided for full preemptive rights to stockholders in future issues of stock, that the bylaws were amended after Oschin became

majority stockholder to delete provisions therein for preemptive rights, and that such amendment was accomplished before the issuance of 1,334 shares of stock subsequently referred to; during the month of September 1957, and upon resolution of Empire's directors, permits were issued by the California Savings and Loan Commissioner for the issuance of 1,334 shares of Empire stock to Oschin as follows, 1,000 shares at $140 per share and 334 shares of $150, which prices were alleged to be less than the market price or book value of the stock; that all 1,334 shares were issued and sold for cash in accordance with the permits, that none of the 1,334 shares were offered by defendants to plaintiff, and no attempt was made to obtain a higher price for such shares; that the sale of these shares was for the sole benefit of Oschin, and that as a result a substantial part of the ownership interest in Empire "was transferred over from the plaintiff to the defendant, Samuel Oschin," the value of said interest being $50,000.

The second cause of action incorporated all of the allegations just summarized, save and except the asserted transfer of plaintiff's ownership interest to Oschin and the value thereof; it was further alleged that prior to the filing of suit demand was made of Oschin that plaintiff be accorded the right to purchase a proportionate amount of stock upon the same terms and conditions of the sale to Oschin, this to enable plaintiff to maintain his proportionate interest in the issued capital stock; that the issuance to Oschin of 1,334 shares diluted plaintiff's interest in Empire's assets and surplus; that $2\frac{1}{2}$ per cent of the additional 1,334 shares represents the plaintiff's interest in Empire transferred by such sale; that plaintiff's original 50 shares, representing a $2\frac{1}{2}$ per cent interest, has been diluted to an interest of $1\frac{1}{2}$ per cent. A declaration was sought that plaintiff has the right to maintain his proportionate interest in Empire by purchasing a proportionate portion of the newly issued shares on the same terms and conditions as Oschin, either from Oschin directly, or from Empire by requiring Empire to apply for a permit to issue stock to plaintiff on such same terms and conditions.

The prayer asked that Oschin be adjudged trustee of $2\frac{1}{2}$ per cent of the 1,334 shares for plaintiff's benefit, that Oschin be compelled to transfer $2\frac{1}{2}$ per cent thereof to plaintiff or, in the alternative, to pay plaintiff its present fair market value; dividends and accretions to the stock (from the time of its acquisition) were also sought.

Plaintiff represented to the court below, as set forth in its judgment of dismissal, that "he could not allege any additional ultimate facts"; we are not, therefore, concerned with the problem of any abuse of discretion for failure to permit further amendments. ■■■ Additionally, the order sustaining the demurrer to the fourth amended complaint does not specify the ground or grounds upon which the ruling was based; therefore, if the complaint is insufficient on any ground properly specified in the demurrer, the judgment entered after the order sustaining the demurrer will not be reversed on appeal. (*Stowe* v. *Fritzie Hotels, Inc.*, 44 Cal.2d 416, 425 [282 P.2d 890].)

The first question seems to be whether despite the abolition of preemptive rights by statutory enactment (Corp. Code, § 1106)*, there still remain to minority stockholders certain quasi preemptive rights which arise out of the enforcement of the fiduciary obligations of officers, directors and majority shareholders. Reference is made by both sides to the following commentary on the effect of the enactment of section 1106, *supra*:

"It is generally held at common law that a shareholder, in order to protect his relative interest in (1) surplus and (2) control or voting rights, may restrain the creation or issue of additional shares unless he has been offered an option or opportunity to purchase a proportionate part. Certain exceptions are however recognized, as where shares are issued to acquire property rather than to raise capital in cash. Preemptive rights can be asserted only when they can be exercised consistently with the object which the disposition of the additional shares is designed to accomplish.

"The abrogation or preemptive rights under the California law, making it necessary to provide for them by special provisions in the articles if desired, may seem to play directly into the hands of manipulators and promoters. It may be charged that this provision makes it more easy for the insiders to juggle the other shareholders out of part of the value of their investment and in effect authorizes manipulation, fraud, and discrimination to the prejudice of prior investors.

"It is believed, however, that these charges are not well founded. It seems a wise policy as a general rule to give the directors wide authority not only in the conduct of the

---

*"Unless the articles provide otherwise, the board of directors may issue shares, option rights, or securities having conversion or option rights, without first offering them to shareholders of any class."

business itself, but also in the procedure for obtaining new capital, as by arrangements with underwriting and banking concerns as to stock issues. The preemptive right to a first offering of a new issue of shares may operate as a hindrance to legitimate financing. It has never been clearly defined and is subject to so many more or less arbitrary exceptions that it is of little practical value as a protection to the shareholders. Waivers by provision in the articles are everywhere customary.

"The idea of the State Bar Committee which drafted the present provision in 1930 was that justice and convenience could be served more effectually by holding directors to high standards of good faith and fairness in the exercise of their power to issue shares rather than by any positive rule conferring preemptive rights. Stock structures have become so complex in recent years that it has become impracticable to find any fair basis of apportionment of new issues between different classes of shares. The practical solution is to permit the issues of shares for their reasonable market value without favoritism toward the insiders. Even when a new issue of shares is offered to existing shareholders pro rata, it will often work injustice, because many of the shareholders may be unable to take their allotment and may thus lose their relative interest and influence. In many cases the directors may exercise their discretion to make a first offering to existing shareholders in order to avoid any suspicion or charge of favoritism on their part.

"This section must not be understood as relieving the directors from the obligation to exercise the utmost good faith and fairness in the issue of 'shares, option rights, or securities having conversion or option rights,' or as allowing them to issue shares to certain favored persons without obtaining for the corporation the largest return possible, any more than a waiver in the articles would do so." (Ballantine & Sterling, California Corporation Laws (1949 ed.), § 104, pp. 142-143.)

▇ The distinction "between pre-emption as a general right and that protection provided shareholders, even in the absence of pre-emptive rights, where the directors are guilty of bad faith" is said to serve as the rationale of section 1106, *supra,* citing the excerpt from Ballantine & Sterling, *supra.* (40 Cal.L.R. 138.) Reliance is placed by appellant on *Schwab* v. *Schwab-Wilson Machine Corp.,* 13 Cal.App.2d 1 [55 P.2d 1268], as supportive of his claim that the doctrine of quasi preemptive rights "independent of, but not unlike the preemp-

tive right," exists in this state. In that case relief was granted a complaining shareholder where the directors secretly issued shares to themselves in order to gain control of the corporation. The court stated (p. 3) : "A corporate director acts in a fiduciary capacity, not only towards the corporation itself . . . but also towards the stockholders. . . . [Even where] stockholders have no preemptive right to subscribe to new issues of stock . . . nevertheless they have the right to demand that directors and officers of the corporation do not use their position for their own personal advantage, or to discriminate between stockholders, or to so cause stock to be issued as to make a profit for themselves or to obtain or retain control of the corporation." Respondents argue, and appellant concedes, that there are "substantial differences" between "the fact situation of *Schwab* and that of the instant case"; thus, the issuance of the stock in question by respondents did not bring about a change in control, as in *Schwab*, of the corporation; nevertheless, says appellant, the court in *Schwab* manifested the attitude that it will not tolerate misuse of authority on the part of controlling stockholders and directors to the detriment of fellow shareholders, regardless of the form which such abuse happens to take. While decided by an intermediate appellate court (a hearing by the Supreme Court not having been requested), the Schwab case has never been disapproved, and the quoted pronouncement remains controlling to the present day, dependent on the interpretation to be given the opinion's rather broad approach to the problem.

 Assuming the existence of quasi preemptive rights, however, there is the second and serious question whether appellant may maintain the present action in his individual name (be it one for declaratory or other relief) where, under the facts alleged, the only remedy is in the form of a stockholder's derivative suit. "Generally, a stockholder may not maintain an action in his own behalf for a wrong done by a third person to the corporation on the theory that such wrong devalued his stock and the stock of the other shareholders, for such an action would authorize multitudinous litigation and ignore the corporate entity." (*Sutter* v. *General Petroleum Corp.*, 28 Cal.2d 525, 530 [170 P.2d 898, 167 A.L.R. 271].) Under the legal concept of corporate entity, stockholders as such lose their individualities in the individuality of the corporation as a separate and distinct person, and by investing their money in the corporation they recog-

nize it as the person primarily entitled to control and manage its use for the common benefit of all the stockholders; hence, it is a well-established general rule that a stockholder of a corporation has no personal or individual right of action against third persons, including the corporation's officers and directors, for a wrong or injury to the corporation which results in the destruction or depreciation of the value of his stock, since the wrong thus suffered by the stockholder is merely incidental to the wrong suffered by the corporation and affects all stockholders alike (167 A.L.R. 280).

Notwithstanding the general rule just mentioned, the courts have recognized an exception which permits a stockholder to maintain an action in his own right (although the corporation may likewise have a cause of action for the same wrong) where it appears that the injury resulted from the violation of some special duty owed the stockholder by the wrongdoer and having its origin in *circumstances independent of the plaintiff's status as a stockholder* (167 A.L.R. 285). ▆▆▆ "It is only where the injury sustained to one's stock is peculiar to himself alone, and does not fall alike upon other stockholders, that he can recover as an individual" (*Shenberg* v. *DeGarmo,* 61 Cal.App.2d 326, 332 [143 P.2d 74]) ; otherwise stated, "to obtain a *personal* right of action there must be *relations* between him [the shareholder] and the tort-feasor *independent* of those which the shareholder derives through his interest in the corporate assets and business." (*Shenberg* v. *DeGarmo, supra.*) Such independent relations or circumstances were found in *Sutter* v. *General Petroleum Corp., supra,* where plaintiff, by reason of defendants' fraud, was induced to abandon *his own* oil development projects and invest in a corporation whose assets became valueless because of the fraud. The court concluded that the dual nature of the injury did not preclude an action by the stockholder as an individual to recover damages predicated on the fraud practiced on him *in the first instance* which rendered his stock investment worthless. Similarly, in *Campbell* v. *Clark,* 159 Cal.App.2d 439 [324 P.2d 55], "the central and dominant theme of the pleading [was] an alleged fraud which induced plaintiff to sell her eighty shares of stock, to her damage in the sum of $60,000," even though "some aspects of the complaint . . . [were] suggestive of a derivative cause of action" (p. 443). Again, and illustrative of the rule that the injury must be peculiar to plaintiff alone, in *Dumm* v. *Pacific Valves,* 146 Cal.App.2d 792 [304 P.2d 738], minor children of a deceased

stockholder were permitted as individuals (through their guardian) to maintain a declaratory relief action with respect to possession of shares of stock comprising a testamentary trust (of which they were beneficiaries) created by their father; the court recognized that the corporation might have had an action against the individual defendants growing out of their alleged appropriation of its profits, but "that does not affect the right of these appellants, as individuals, to maintain the instant action" (p. 798).

In the case at bar there is no allegation that the injury to the other minority stockholders was in any way different from the purported injury to appellant. As said in *Anderson* v. *Derrick*, 220 Cal. 770, 773 [32 P.2d 1078] : "True, the plaintiff has suffered a depreciation in the value of his stock as a result of the wrong, and in this respect the injury was personal to the holders of the stock. But every stockholder has suffered from the same wrong, and if the plaintiff can maintain an action for the recovery of the damages sustained by him, every stockholder must be accorded the same right." In this connection there is this rather significant analysis of the problem in appellant's opening brief: "Reduced to one sentence, appellant has alleged that respondent Oschin has used his position to reap great profits *at the expense of the minority.*" Does this statement not immediately suggest that appellant's predicament is no different from that of his fellows in the minority group? But, says appellant, "courts of every jurisdiction which have had occasion to rule on cases involving similar facts have looked upon such conduct as a breach of the fiduciary duties imposed upon corporate directors"; cited as authority is *Hammer* v. *Werner*, 239 App. Div. 38 [265 N.Y.S. 172]). The Hammer case was likewise cited by appellant in *Shenberg* v. *DeGarmo, supra*; as pointed out in the court's opinion (61 Cal.App.2d 326 [143 P.2d 74]), plaintiff Hammer "was no longer a stockholder and there was no present stockholder of the corporation who was in position to maintain a derivative action." Continuing, "All of the cases cited by plaintiff recognize the rule that a corporate action is necessary to redress wrongs done to the corporation and that an individual right of action can arise only in cases where shareholders have suffered individual wrongs independent of the wrongs to the corporation or, as in the case of *Hammer* v. *Werner, supra,* there is no present stockholder in position to commence a derivative action" (p. 333). Interestingly enough, also, the Hammer case declares

that if stock is issued or obtained at an inadequate price, the wrong "may be redressed only in a derivative form of action" (265 N.Y.S. 172, 177) ; in his reply brief, however, appellant "re-states" his position and asserts that "he has done his best to make it clear that his complaint does not rest on the fact of an inadequate consideration being paid for the stock in question: Appellant bases his entire appeal upon the fact that he would have a cause of action under the other facts alleged, even if respondent Oschin had paid a reasonable price for the stock." This argument seems out of harmony with his prior (and proper) concession that section 1106 of the Corporations Code proscribes primarily the issuance of shares "to certain favored persons without obtaining for the corporation the largest possible return. . . ." (*Ballantine & Sterling, California Corporation Laws, supra,* p. 143.)

We have examined the several other cases from other jurisdictions; they do not suggest a different result from that here reached. In fairness to appellant, we note that the line between the two classes of wrongs, one of which gives rise to the cause of action here sought to be pleaded, "does not appear ever to have been very clearly drawn" (*Coronado Development Corp.* v. *Millikin,* 175 Misc. 1 [22 N.Y.S.2d 670, 674] ; in the matter of possible depreciation in the value of shares (and that is the instant claim), the New York court went on to observe that "where the stockholder still holds his shares, . . . every depreciation in the value thereof resulting from a loss or destruction or depreciation of corporate assets or interference with corporation business must be redressed in a suit by or on behalf of the corporation, and gives rise to no cause of action in favor of stockholders." (22 N.Y.S.2d 670, 674.)

Under section 1106 of the Corporations Code the stock of a corporation, absent any provision in the articles to the contrary, may be sold to any persons "without first offering them to shareholders of any class." The only restraints are those which (1) prevent the issuance of stock from being used to obtain or retain control at the expense of the other stockholders, involving a personal right of the stockholder thus ousted from control, or (2) the obligation to obtain for the corporation the largest possible return from the sale of its stock, involving a corporate right assertable by the stockholder only in the name of the corporation and for the benefit of all stockholders. Since neither restraint was alleged to have been violated in the instant case, and since appellant concedes his inability to plead additional facts, the demurrer to the fourth

amended complaint was properly sustained without leave to amend.

The judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 4, 1961.