**In re Donald Ross BANGERTER, Debtor.**

**Peter C. ROOTS, an individual and as Trustee of the Peter C. Roots Trust, Plaintiff,**

**v.**

**Donald Ross BANGERTER, Defendant.**

**Bankruptcy No. SA 87–03895 JR.**
**Adv. No. SA 88–0392 JR.**

United States Bankruptcy Court,
C.D. California.

Oct. 30, 1989.

---

Danny R. Nelson of Fitzsimmons, Schroeder & Nelson, Springfield, Mo., for defendant.

Douglas P. Smith of Meserve, Mumper & Hughes, Irvine, Cal., for plaintiff.

## MEMORANDUM OPINION

JOHN E. RYAN, Bankruptcy Judge.

At trial, it was agreed that two legal issues should be bifurcated and decided before the court should take testimony. The issues are whether plaintiff has standing to bring this proceeding and whether under § 523(a)(4) of the Bankruptcy Code, a majority shareholder is a fiduciary for a minority shareholder. After briefing and argument, I took the issues under submission and continued the trial.

## JURISDICTION

This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(a) (the district courts shall have original and exclusive jurisdiction of all cases under Title 11), 28 U.S.C. § 157(a) (authorizing the district courts to refer all Title 11 cases and proceedings to the bankruptcy judges for the district) and General Order No. 266, dated October 9, 1984 (referring all Title 11 cases and proceedings to the bankruptcy judges for the Central District of California). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

## STATEMENT OF STIPULATED FACTS

The parties stipulated to the following facts:

1. At all relevant times, debtor was a majority shareholder of Data Load, Inc. ("Data Load").

2. Data Load was at all relevant times an Oklahoma corporation qualified to do business in California.

3. At all relevant times, plaintiff was a minority shareholder of Data Load.

4. On March 24, 1984, plaintiff, debtor and Mr. William A. Williamson entered into a written contract (the "Contract") by which plaintiff purchased 20% of the capital stock of Data Load for $50,000. The Contract also provided that plaintiff would guarantee a $50,000 line of credit for the benefit of Data Load. The Contract further provided that Inverdata, Inc. would have all rights to market Data Load's products and technology in the Far East and Europe.

5. On March 28, 1986, Data Load received a line of credit from Valencia Bank. Plaintiff, debtor and Williamson personally guaranteed the Valencia credit line and plaintiff posted bearer bonds as security for repayment. The Valencia credit line was fully borrowed by January of 1985.

6. In January 1985, Data Load obtained a new credit line from Wells Fargo Bank for $300,000 and paid $150,000 to satisfy the Valencia Bank borrowings.

7. Prior to January 14, 1986, Data Load received $53,000 from Applied Data Communications ("ADC") and gave in exchange

promissory notes for $53,000. Debtor and Williamson received $10,000 each from the $53,000.

8. On January 14, 1986, Data Load sold its scanner assets to ADC. The agreement of sale was executed by Walter Kane for ADC and by debtor and Williamson for Data Load. ADC paid $71,000 for the scanner assets. From the $71,000, debtor and Williamson each received $30,000. ADC acquired the worldwide rights to market the scanner and scanner technology.

9. In March 1986, plaintiff paid $231,591.75 to pay Data Load's obligation on the Wells Fargo credit line. To date, Data Load has not made any payments on the Wells Fargo credit line.

In discussing the pre-trial order, debtor raised the standing issue. Debtor argued that the alleged defalcation is a cause of action that Data Load may have, but it is not a claim that plaintiff can assert individually. Plaintiff responded that he has a personal cause of action against debtor that is not based upon an injury to Data Load.

In addition to the standing issue, the question was raised whether under § 523(a)(4) a majority shareholder is a fiduciary for a minority shareholder. Since plaintiff must prevail on these issues in order to proceed, I continued the trial to answer these questions.

## DISCUSSION

In reviewing the standing issue, I begin with *Jones v. H.F. Ahmanson & Co.*, 1 Cal.3d 93, 81 Cal.Rptr. 592, 460 P.2d 464 (1969), a key case in California that sets forth the standards for determining when a shareholder may assert a claim individually against a majority shareholder rather than derivatively for the corporation. In *Ahmanson*, Jones, a minority shareholder in United Savings and Loan Association of California (the "Bank"), sued former majority stockholders United Financial and certain officers of the Bank for damages resulting from breaches of fiduciary duties by the defendants in the creation and operation of United Financial. According to Jones, to increase the value of their invest-

ments, the defendants exchanged their shares in the Bank for shares of United Financial. They did not offer the minority shareholders, including Jones, an opportunity to participate in the exchange. A public offering of United Financial's stock was later made and from the $7.2 million raised in the offering, $6.2 million was distributed immediately to the defendants.

The defendants moved to dismiss Jones' cause of action asserting that it was derivative in nature since the injury was suffered by all minority shareholders of the Bank. The lower court agreed with the defendants and dismissed the case based upon *Shaw v. Empire Sav. & Loan Assn.*, 186 Cal.App.2d 401, 9 Cal.Rptr. 204 (1960). In *Shaw*, the defendant majority shareholder, who controlled the board of directors, had the corporate by-laws amended to delete a provision granting pre-emptive rights. He then caused shares to be issued to himself at less than book value, thus diluting the interests of minority shareholders. *Id.* at 402–403, 9 Cal.Rptr. 204. The court concluded that because the injury to the plaintiff was no different from that caused to other minority shareholders, relief was available only in a derivative action. *Id.* at 408–409, 9 Cal.Rptr. 204.

The California Supreme Court in *Ahmanson* indicated that the test in *Shaw*, "[D]oes not properly distinguish the cases in which an individual cause of action lies." 1 Cal.3d at 106, 81 Cal.Rptr. 592, 460 P.2d 464. The court summarized the following factors that are applicable to a shareholder's derivative suit: (1) A shareholder's derivative suit seeks to recover for the benefit of the corporation and all its shareholders when the injury is to the corporation and the corporation fails to act; (2) the action is derivative if the underlying complaint is injury to the corporation, or to all the shareholders without exception, or seeks to recover assets for the corporation or to prevent the dissipation of its assets; (3) a derivative suit is brought to enforce a cause of action that the corporation has against some third party or to compensate the corporation for injuries that it has suffered at the hands of third parties; (4)

management owes shareholders a duty to take the necessary steps to enforce corporate claims. When management fails to act, the shareholders have a right to take action. Although the corporation is named as a defendant, the corporation is really the plaintiff and it directly obtains the benefits from any judgment. Shareholders may benefit indirectly through enhanced stock values created from an increase in corporate assets. *Id.* at 106–107, 81 Cal.Rptr. 592, 460 P.2d 464.

On the other hand, a shareholder may also possess a claim individually. For example, in *Ahmanson,* Jones alleged an injury caused by the actions of the majority shareholders. Although *Shaw* held that the shareholder had to show an injury unique to plaintiff, *Ahmanson* holds to the contrary. As long as the injury is not just incidental to an injury to the corporation, a shareholder's cause of action can be maintained. *Id.* at 107, 81 Cal.Rptr. 592, 460 P.2d 464.

Plaintiff cites two cases subsequent to *Ahmanson* that are instructive and helpful. In *Smith v. Tele–Communication, Inc.,* 134 Cal.App.3d 338, 184 Cal.Rptr. 571 (1982), a minority shareholder in a subsidiary corporation sued the parent corporation and the directors of the subsidiary individually alleging fraud and breach of fiduciary duties. According to the plaintiff, the majority shareholder caused the parent corporation to file a consolidated tax return thereby allocating all the tax benefits to the parent corporation. The impact from this was to lessen the plaintiff's distributive share from the subsidiary. The trial court dismissed the action holding that the plaintiff did not have standing to bring the action individually. On appeal, the court reviewed the criteria set forth in *Ahmanson* stating:

> The action is in the corporate right, if the gravamen of the complaint is injury to the corporation, or to the whole body of its stock and property *without any severance or distribution among individual holders.* A derivative suit is brought to enforce a cause of action which the corporation itself possesses against some third party, a suit to recompense the

corporation for injuries which it has suffered as a result of the acts of third parties. The management owes to the stockholders a duty to take proper steps to enforce all claims which the corporation may have. When it fails to perform this duty, the stockholders have a right to do so. The corporation nevertheless is the real plaintiff and it alone benefits from the decree; the stockholders derive no benefit therefrom except the indirect benefit resulting from a realization upon the corporation's assets. A stockholders individual suit, on the other hand, is a suit to enforce a right against the corporation which the stockholder possesses as an individual.

*Id.* 134 Cal.App.3d at 342–343, 184 Cal. Rptr. 571.

The *Smith* court looked at plaintiff's complaint and found that he was not attempting to recover on behalf of the corporation for the diminishment of corporate assets. Rather, Smith asserted an injury to himself as the sole minority shareholder. The court accepted Smith's position that he had a claim separate from any harm to the corporation. After finding that Smith had standing to assert his claim, the court affirmed that in California majority shareholders have fiduciary duties towards minority shareholders as well as the corporation. *Id.* at 343–344, 184 Cal.Rptr. 571. The majority stockholder must show the inherent fairness of the transaction and that it was entered into in good faith. The transaction must, therefore, carry all the earmarks of an arms length bargain. If it does not, it should be set aside. *Id.* at 344, 184 Cal.Rptr. 571.

The second case cited by plaintiff is *Crain v. Electronic Memories & Magnetics Corp.,* 50 Cal.App.3d 509, 123 Cal.Rptr. 419 (1975). In *Crain,* the plaintiffs alleged that the majority corporate shareholder caused the subsidiary to sell its assets thereby benefiting the defendant at the expense of the minority shareholders. The trial court granted the defendant's motion for judgment on the pleadings finding that the complaint set forth only derivative causes of action. On appeal, the court

reversed the trial court finding that the plaintiff had asserted an individual cause of action under *Ahmanson*. *Id.* 50 Cal. App.3d at 520, 123 Cal.Rptr. 419. "The high court noted that a breach of fiduciary duty by a majority shareholder does not necessarily give rise to either a corporate or a derivative cause of action, but that the same operative facts may give rise to both causes of action simultaneously. *Id.* at 521, 123 Cal.Rptr. 419.

The court in *Crain* found that by selling the assets of the subsidiary and locking the plaintiffs into ownership of a shell corporation the defendant allegedly engaged in self-enriching activities at the expense of the minority shareholders. This was sufficient to allow plaintiffs the opportunity to assert their individual claims. *Id.* The court also reaffirmed the principle that a majority shareholder may not use its power to control corporate activities for its benefit, or in a manner detrimental to the minority's interest. *Id.* at 522, 123 Cal.Rptr. 419.

In the matter before me, plaintiff asserts that the withdrawal of funds by debtor damaged him because it removed assets from the corporation that could have been used to pay Data Load's obligation on the Wells Fargo credit line. By reducing Data Load's capacity to pay the Wells Fargo Bank, plaintiff had to pay more on his guarantee. An unauthorized removal of corporate assets certainly injures Data Load. It also simultaneously causes injury to the plaintiff. The *Ahmanson* court recognized dual injuries to shareholders and the corporation from a majority shareholder's breach of fiduciary duties. It, therefore, allowed a minority shareholder to assert an individual claim even though the corporation suffered harm from the same acts. The *Smith* and *Crain* decisions support this interpretation of *Ahmanson*. Accordingly, plaintiff has standing under California law to assert individually his claims against debtor in this proceeding.

The next issue is whether under federal law the relationship of a majority shareholder to a minority shareholder establishes a fiduciary relationship under § 523(a)(4). Section 523(a)(4) provides that "A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny". The term "fiduciary" in § 523(a)(4) is given a very narrow definition and relates only to "express" or "statutory" trusts. See *In re Short*, 818 F.2d 693, 695 (9th Cir.BAP 1987).

Two Ninth Circuit cases bear directly on this question. In *In re Hultquist*, 101 B.R. 180 (9th Cir.BAP 1989), plaintiff appealed the bankruptcy court's dismissal of its cause of action on the basis that under § 523(a)(4) there was no pre-existing fiduciary relationship between the parties. The plaintiff in *Hultquist* asserted that the debtor fraudulently obtained a $20,000 commission. In moving under § 523(a)(4), plaintiff argued that debtor's status as a corporate officer was sufficient to establish a fiduciary relationship between plaintiff corporation and debtor. *Id.* at 185. To support this view, plaintiff cited several Washington cases that hold that corporate officers owe a fiduciary duty to the corporation. *Id.*

In analyzing the law, the BAP affirmed the principle that the term "fiduciary" in § 523(a)(4) is a narrowly defined question of federal law and state law is consulted only for purposes of determining when a trust exists. *Id.* It also confirmed that the trust must have been created before the act of wrongdoing. *Id.* The bankruptcy court held that there was no pre-existing trust. The BAP affirmed the bankruptcy court stating that "[A]lthough the debtor may have owed a general fiduciary duty as a corporate officer under state case law, *no pre-existing or statutorily created trust existed at the time of the alleged wrongdoing.*" *Id.*

The key words in this statement are "no pre-existing or statutorily created trust". I was surprised that the BAP did not discuss *Ragsdale v. Haller*, 780 F.2d 794 (9th Cir.1986), to shed some additional light on the meaning of these words. *Ragsdale*, is certainly a leading case in this area. Re-

viewing the facts in *Ragsdale,* Ragsdale and Haller were partners. Haller, the debtor, took undisclosed bonus payments contrary to the percentage allowed by permit. Ragsdale filed a nondischargeability complaint under § 523(a)(4). Haller argued that there was no fiduciary relationship within the meaning of § 523(a)(4). The court reviewed state law to determine if a pre-existing or statutorily created trust existed between them. Ragsdale pointed to Cal.Corp.Code § 15021 (West 1977) and to California cases holding that California partners are trustees for each other. Section 15021(1) provides: "Every partner must account to the partnership for any benefit, and hold as *trustee* for it any profits...." (Emphasis added). In reviewing California case law, the court determined that partners in California are trustees for each other. As the court stated "This is more than just a fiduciary relationship created in response to some wrongdoing; California has made all partners trustees over the assets of the partnership. Accordingly, we hold that California partners are fiduciaries within the meaning of § 523(a)(4) and that Haller's debt to Ragsdale is non-dischargeable." *Id.* at 796–97. The court concluded that if state law holds that a partner is a *trustee* over partnership assets, then the partner is a fiduciary within the narrow meaning of § 523(a)(4). *Id.* at 797.

Is *Hultquist* consistent with the Ninth Circuit's opinion in *Ragsdale?* I think it is because of one critical distinction. It appears from the *Hultquist* decision that a corporate officer is not a trustee of the corporate assets. On the other hand, in *Ragsdale,* it is clear that a partner in California is a trustee of the partnership's assets. This is a critical distinction. It is a distinction that governs the proceeding before me. As far as I can determine, California law does not hold that a majority shareholder is a trustee of the corporate assets or any interests that shareholders may have in the corporate *res.* For this reason, like in *Hultquist,* there is no preexisting or statutorily created trust existing at the time of the alleged wrongdoing.

Accordingly, plaintiff cannot maintain a § 523(a)(4) cause of action.

Separate findings of fact and conclusions of law with respect to this ruling are unnecessary. The within memorandum opinion shall constitute my findings of fact and conclusions of law.

### ORDER DISMISSING § 523(a)(4) CAUSE OF ACTION

In accordance with the findings of fact and conclusions of law set forth in my memorandum opinion of this date, it is

ORDERED that plaintiff's cause of action pursuant to § 523(a)(4) of the Bankruptcy Code is dismissed.