**In re Gregory Dewitt CANTRELL, Debtor.**

**Cal–Micro, Inc., etc., et al., Plaintiffs,**

**v.**

**Gregory Dewitt Cantrell, Omni Enterprises, Inc., etc., Defendants.**

**Bankruptcy No. 99–49461 TS. Adversary No. 00–4136 AT.**

United States Bankruptcy Court, N.D. California.

Feb. 13, 2001.

*Certificate of Title Issues,* **51 Consumer Fin. L.Q.Rep.** 367, 369 (1997).

Jon R. Vaught, Vaught & Boutris, LLP, Oakland, CA, for Debtor.

Brian Fortune Gill, The Gill Law Offices, Pacific Grove, CA, for Creditors.

## MEMORANDUM OF DECISION

LESLIE TCHAIKOVSKY, Bankruptcy Judge.

In this adversary proceeding, Plaintiffs Cal–Micro, Inc. ("Cal–Micro"), Cal–Micro, Inc. Employee Stock Option Plan ("Cal–Micro ESOP"), and The Pauline Countryman 1990 Trust (the "Countryman Trust") (collectively "Plaintiffs") seek a nondischargeable judgment against the above-captioned debtor Gregory DeWitt Cantrell (the "Debtor") pursuant to 11 U.S.C. § 523(a)(4) in the amount of $769,973.88.[1] Plaintiffs filed a motion for summary judgment on the ground of collateral estoppel based on a pre-petition state court default judgment. The Debtor opposed the motion and filed a cross-motion for summary judgment. For the reasons stated below, the Court finds for Plaintiffs and holds that Plaintiffs' judgment claim is excepted from the Debtor's discharge under 11 U.S.C. § 523(a)(4).[2]

## SUMMARY OF FACTS

In May 1995, the Plaintiffs filed a complaint in state court against the Debtor, Omni Enterprises, and others (the "State Court Complaint"). The Ninth Cause of Action of the State Court Complaint alleged that the Debtor, among others, breached his fiduciary duty to the Plaintiffs. The Debtor failed to file an answer, and, on April 12, 1996, the Plaintiffs obtained a default judgment against the Debtor for $1,271,985 in compensatory damages, $10,000 in punitive damages, $4,670 in attorney's fees, $463.75 in costs and post-judgment interest (the "Default Judgment"). The Default Judgment did not specify the causes of action upon which

1. Omni Enterprises, Inc. ("Omni") was apparently joined as a defendant for the sole purpose of obtaining a declaration that Omni was the Debtor's alter ego and is therefore liable with the Debtor on the judgment sought by Plaintiffs.

2. In their complaint, the Plaintiffs also sought to except their claim from the Debtor's discharge under 11 U.S.C. § 523(a)(2)(A) and, in

their motion for summary judgment, initially requested summary judgment on this claim. In response, the Debtor moved to dismiss the claim based on 11 U.S.C. § 523(a)(2)(A). The Plaintiffs did not oppose the Debtor's motion to dismiss and have advised the Court that they have abandoned this legal theory for nondischargeability.

it was based. On March 18, 1999, the Plaintiffs obtained an Order Amending Judgment Nunc Pro Tunc, correcting the misspelling of the Debtor's name from Cantrel to Cantrell. On December 9, 1999, the Debtor filed this chapter 7 case.

## DISCUSSION

### A. LAW GOVERNING COLLATERAL ESTOPPEL

In their motion for summary judgment, Plaintiffs contend that the Default Judgment entitles them to a nondischargeable judgment against the Debtor in the amount specified in the Default Judgment pursuant to 11 U.S.C. § 523(a)(4) based on the doctrine of collateral estoppel. The doctrine of collateral estoppel clearly applies in dischargeability proceedings. *Grogan v. Garner*, 498 U.S. 279, 284 & n. 11, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). It is also clear that, when the prior judgment was issued by a state court, 28 U.S.C., § 1738 requires a bankruptcy court to give a judgment "full faith and credit" by giving it the same collateral estoppel effect it would be given by a state court. *In re Bugna*, 33 F.3d 1054, 1057 (9th Cir.1994).

Under California law, the doctrine of collateral estoppel bars relitigation of an issue when: (1) the issue presented in the current litigation is the same issue that was decided in the prior action, (2) there was a final judgment on the merits in the prior action, and (3) the party against whom the doctrine is sought to be applied was a party to the prior action. *In re Bugna*, 33 F.3d at 1057, citing *Garrett v. City and County of San Francisco*, 818 F.2d 1515, 1520 (9th Cir.1987). California law gives the same collateral estoppel effect to a default judgment that it gives to a judgment after trial. *In re Younie*, 211 B.R. 367, 375 (9th Cir. BAP 1997), *aff'd w/o op'n* 163 F.3d 609, 1998 WL 668120 (1998). Where a complaint alleges alternative theories of recovery and the default judgment does not specify on which theories it is based, the judgment must be deemed to have been based on all theories alleged in the complaint. *Harmon v. Kobrin*, 242 B.R. 183, 187–188 (E.D.Cal.1999) (distinguishing a default judgment from a judgment after trial based on alternative grounds, which has no collateral estoppel effect as to any of the grounds).

The Plaintiffs contend that each of the required elements necessary for collateral estoppel is satisfied here. Clearly, two of the elements have been satisfied: (1) the Default Judgment is a final judgment on the merits and (2) the Debtor and the Plaintiffs were both parties to the State Court Action. The only element in doubt is whether the issues presented in this adversary proceeding were decided in the State Court Action. To determine whether this element has been satisfied, the Court must compare the elements required to establish a nondischargeable claim under 11 U.S.C. § 523(a)(4) with the issues determined in the State Court Action.

### B. ELEMENTS OF NONDISCHARGEABILITY UNDER 11 U.S.C. § 523(a)(4)

Section 523(a)(4) of the Bankruptcy Code provides, in pertinent part, that an individual's chapter 7 discharge does not discharge a debt "for fraud or defalcation while acting in a fiduciary capacity...." [3] Despite the apparent simplicity of this phrase, 11 U.S.C. § 523(a)(4) has proved difficult to construe. Federal bankruptcy law determines whether the debtor was a "fiduciary" for purposes of 11 U.S.C. § 523(a)(4). The debtor qualifies as such only if the debtor was the trustee of an express or statutory trust. State law determines whether such a trust existed. However, the trust in question must have

---

**3.** Section 523(c)(1) conditions this exception on the creditor's filing a timely request in the bankruptcy court to except the debt from the debtor's discharge. The Plaintiffs have complied with this requirement.

been one that existed before any wrongdoing. *Ragsdale v. Haller*, 780 F.2d 794, 796 (9th Cir.1986). Finally, federal law determines what constitutes a "defalcation" for purposes of § 523(a)(4). In this context, a defalcation means a " 'misappropriation of trust funds or money held in any fiduciary capacity; [the] failure to properly account for such funds.' " *In re Niles*, 106 F.3d 1456, 1460 (9th Cir.1997) quoting Black's Law Dictionary 417 (6th ed.1990).

With these standards in mind, the allegations of the State Court Complaint must be examined to determine whether the Default Judgment established the necessary elements of an 11 U.S.C. § 523(a)(4) nondischargeability claim. Clearly, for the reasons discussed above, the fact that the State Court Complaint alleged a cause of action against the Debtor for breach of fiduciary duty under state law and that the Default Judgment granted Plaintiffs' judgment on this cause of action is insufficient to establish that the Plaintiffs' judgment claim is entitled to be excepted from the Debtor's discharge under 11 U.S.C. § 523(a)(4).

## C. ALLEGATIONS OF STATE COURT COMPLAINT

The first section of the State Court Complaint is entitled "General Allegations." In this section, among other things, the State Court Complaint alleged that, in June 1993, the Debtor and another individual ("Wilcher") were the sole shareholders of Omni. It further alleged that, in June 1993, Omni purchased a controlling percentage of the stock of Cal–Micro from the Countryman Trust (one of the Plaintiffs herein and in the State Court Complaint). The State Court Complaint alleged that, in August 1994, due to Omni's defaults under the stock purchase agreement, the agreement was rescinded, the stock was "returned" to the Countryman Trust, and the Countryman Trust became the sole shareholder of Cal Micro.

Paragraph 18 of the State Court Complaint alleged the following:

... between June 1, 1993, and on or about August 11, 1994, defendants WILCHER, CANTREL, and DOE XI through DOE XX, inclusive, and each of them were the duly elected and/or authorized, and/or purported and/or ostensible officers and directors of defendants OMNI ENTERPRISES, INC., and plaintiff CAL–MICRO, INC., and ... as majority stockholders and/or officers and/or directors of said OMNI ENTERPRISES, INC. and CAL–MICRO, INC. owed to plaintiffs fiduciary duties which they breached, as hereinafter alleged.

The second section of the State Court Complaint is entitled "Alter–Ego Allegations." In this section, among other things, the Plaintiffs alleged that Omni was the alter ego of the Debtor. As such, the prior allegation that, during the period from June 1, 1993 to August 11, 1994 (the "Pre–Rescission Period"), Omni was the majority shareholder of Cal–Micro may be read to allege that, during the Pre–Rescission Period, the Debtor was the majority shareholder of Cal–Micro and as such owed a fiduciary duty to the Plaintiffs which he breached.

The State Court Complaint then alleged twelve separate causes of action. The Ninth Cause of Action was for breach of fiduciary duty. This section incorporated by reference the first and second sections of the State Court Complaint: i.e., the General Allegations and the Alter–Ego Allegations as described above. It then alleged that, during the Pre–Rescission Period, the Debtor, without corporate authority or the Plaintiffs' consent, did or permitted to be done, the following things in breach of his fiduciary duty:

A. Expropriated and converted to ... [his] own uses and purposes, and to the uses and benefit of the Defendant Corporations, corporate funds and assets of plaintiff CAL–MICRO, INC.
. . . .

B. Made unauthorized loans of corporate funds and assets of plaintiff

CAL–MICRO, INC. to ... [himself] and to the Defendant Corporations, without the consent of plaintiffs herein....

C. Made and used extensions of credit, credit accounts credit cards of plaintiff CAL–MICRO, INC. to procure goods and services for ... [himself] and the Defendant Corporations....

D. Failed to use the corporate funds, income and accounts receivable of plaintiff CAL–MICRO, INC. for the payment of said plaintiff's operational expenses, accounts payable, payroll expenses, and expenses of taxes and insurance....

The Ninth Cause of Action further alleged that, in doing or permitting these acts to be done, the Debtor "did not exercise the care required of directors and officers of plaintiff CAL–MICRO, INC., in good faith, in a manner which was in the best interests of said corporation and its shareholders, including the ... [Plaintiffs] and with such care, including reasonable inquiry, as an ordinary prudent person in a like position would use under similar circumstances, all to plaintiffs' damages as hereinafter alleged."

The State Court Complaint alleged that, as a result of these breaches by the Debtor and the other defendants, the Plaintiffs were damaged in an amount to be proved. In particular, the State Court Complaint alleged that, after the stock purchase agreement was rescinded and before the State Court Complaint was filed, Cal–Micro was unable to meet its operating expenses, had been forced to borrow funds to pay those expenses, and would be forced to continue to do so in the future. The State Court Complaint further alleged that, as a result of the Debtor's breaches of his fiduciary duties, the value of Cal–Micro's stock had been diminished in an amount to be proved. Finally, the State Court Complaint alleged that defendant's conduct was wanton and malicious and that $10 million in punitive damages should be awarded.

## D. SUFFICIENCY OF ALLEGATIONS OF STATE COURT COMPLAINT TO SATISFY ELEMENTS OF CLAIM FOR NONDISCHARGEABILITY UNDER 11 U.S.C. § 523(a)(4)

The final step in the Court's analysis is to determine whether the allegations of the State Court Complaint with respect to the breach of fiduciary duty cause of action, as set forth above, which must be taken as proved based on the Default Judgment, are sufficient to establish a claim for fraud or defalcation by a fiduciary pursuant to 11 U.S.C. § 523(a)(4). As discussed above, to qualify as a "fiduciary" for purposes of 11 U.S.C. § 523(a)(4), the Debtor must be the trustee of an express or statutory trust, and the trust must be one that was created prior to any wrongdoing.

The State Court Complaint did not refer to the Debtor as a trustee nor does it allege that, during the Pre–Rescission Period, the assets of Cal–Micro were held in an express or statutory trust for the benefit of Plaintiffs. However, this failure is not necessarily fatal to the success of Plaintiffs' motion. The State Court Complaint did allege that, during the Pre–Rescission Period, the Debtor was an officer, director, and majority shareholder of Cal–Micro. If California law provides that an officer, director, or majority shareholder is the trustee of either an express or statutory trust that exists prior to any wrongdoing, then the Default Judgment entitles the Plaintiffs to a nondischargeable judgment under 11 U.S.C. § 523(a)(4).

The Plaintiffs do not contend that California law provides that an officer, director, or majority shareholder is the trustee of an express trust with respect to corporate assets. An express trust is a trust created by agreement. Its characteristics are: (1) sufficient words to create a trust; (2) a definite subject; and (3) a certain and ascertained object or res. *In re Stanifer*, 236 B.R. 709, 714 (9th Cir. BAP 1999). An essential element of an

express trust is that the trustee hold title to the trust res. *See also In re Stokes*, 142 B.R. 908, 910 (Bankr.N.D.Cal.1992), citing, among other cases, *Bainbridge v. Stoner*, 16 Cal.2d 423, 427–428, 106 P.2d 423 (1940).

However, the Plaintiffs do contend that California law establishes that an officer, director, and controlling shareholder are trustees of a statutory trust with respect to corporate assets. A statutory trust can be created either by statute or by case law. *Ragsdale v. Haller*, 780 F.2d 794, 796–797; *In re Stanifer*, 236 B.R. 709, 714 (9th Cir. BAP 1999). In *Ragsdale*, the issue presented was whether a general partner was the trustee of a statutory trust with respect to the assets of the partnership. The *Ragsdale* court found that the statutes cited by the plaintiff were insufficient to create such a trust but that the relevant case law was sufficient to do so. *Ragsdale v. Haller*, 780 F.2d at 797, n. 2.

The Plaintiffs contended first that California statutory law makes an officer, director, and controlling shareholder a trustee of a statutory trust. They cited the following sections of the California Corpo-

rations Code: sections 309, 310, 315, 316, 500, 501, 502, and 503.[4] The Court has examined these sections and, like the *Ragsdale* court, finds none of them sufficient to make an officer, director, or controlling shareholder the trustee of a statutory trust.[5]

However, the Plaintiffs also contended that California case law makes a director, officer, or controlling shareholder a trustee of a pre-existing statutory trust with respect to corporate assets. They cited three California cases in support of this contention: *Interactive Multimedia Artists, Inc. v. Superior Court of Los Angeles County*, 62 Cal.App.4th 1546, 73 Cal. Rptr.2d 462 (1998), *Poor v. Yarnell*, 28 Cal.App. 714, 153 P. 976 (1915), and *The Farmers' and Merchants' Bank of Los Angeles v. Downey*, 53 Cal. 466 (1879).[6]

In *Interactive Multimedia Artists, Inc.*, the issue was whether the plaintiff had a right to a jury trial on a breach of fiduciary duty claim against a corporate officer, director and controlling shareholder. In addressing this issue, the court stated that: "The fiduciary duty of a controlling shareholder or director to a minority

---

4. Plaintiffs also cited section 116 of the California Corporations Code. The Court concludes that this reference constitutes a typographical error and that the intended reference was to section 316.

5. All but one of the sections cited deal only with directors; the exception deals with both officers and directors: section 315 which states how and when a corporation may make a loan to an officer or director or guarantee an officer's or director's liability to a third party. None of the sections cited deals with controlling shareholders. Sections 500 through 503 specify when it is improper for a corporation to make distributions to shareholders. These sections are relevant only as they relate back to section 316 which makes a director liable for approving a prohibited distribution.

6. The Plaintiffs also cited *In re Niles*, 106 F.3d 1456 (9th Cir.1997) and *Pepper v. Litton*, 308 U.S. 295, 306, 60 S.Ct. 238, 84 L.Ed. 281 (1939). *Pepper v. Litton* is discussed in footnote 8. The holding in *Niles* is not on point. *Niles* involved a real estate broker and prop-

erty manager who had misappropriated client funds contrary to a statute requiring her to place the funds in her trust account. Moreover, the existence of an express trust was taken as undisputed. The *Niles* court viewed the critical issue as whether the debtor's conduct was sufficiently wrongful to constitute a defalcation within the meaning of 11 U.S.C. § 523(a)(4). 106 F.3d at 1459. Here, there is no question that the Debtor's alleged conduct, which must be taken as proved based on the Default Judgment, qualifies as a defalcation within the meaning of 11 U.S.C. § 523(a)(4). For the same reason, the Court finds irrelevant and unpersuasive the unpublished decision in Wilcher's bankruptcy. In reliance on *Niles*, the district court concluded that the issue was whether Wilcher had been guilty of a defalcation for purposes of 11 U.S.C. § 523(a)(4). For that reason, the Court declines to rule on the Plaintiffs' request that it take judicial notice of the decision and the Debtor's request that the Court strike the decision from the record.

shareholder is based on 'powers in trust.' [Citation omitted.]" [7] The court also referred to the relationship of a controlling shareholder or director as a "trust relationship." 62 Cal.App.4th at 1555, 73 Cal. Rptr.2d 462. In *Poor v. Yarnell*, 28 Cal. App. 714, 153 P. 976 (1915) the issue was whether a corporate officer should be ordered to permit a shareholder to inspect the corporation's list of names and addresses of other shareholders. The court concluded that the shareholder was entitled to see the list, stating that the board of directors "as officers of the corporation" are "trustees" for the stockholders. 28 Cal.App. at 715, 153 P. 976.

The holding in *Farmers' and Merchants' Bank of Los Angeles v. Downey*, 53 Cal. 466 (1879) is somewhat closer to the mark. In that case, a director of a banking corporation was ordered to pay over to the corporation profits from a loan the director made personally after declining to make the loan on behalf of the corporation. The court stated that: " 'The officers and directors of a corporate body ... are trustees of the stockholders, and cannot, without being guilty of fraud, secure to themselves advantages not common to the latter.' " 53 Cal. at 468, 3 P.C.L.J. 137.

In the absence of *Ragsdale*, the Court would be inclined to find this sparse and ambiguous case law insufficient to make an officer, director or controlling shareholder a fiduciary within the meaning of 11 U.S.C. § 523(a)(4). However, the case law on which the *Ragsdale* court based its decision that a partner was a fiduciary within the meaning of 11 U.S.C. § 523(a)(4) was just as sparse and ambiguous.

The *Ragsdale* court cited seven California court decisions as the basis for its holding. *Ragsdale v. Haller*, 780 F.2d at 797, n. 2. Three of the cases cited are of no particular interest: i.e., *Laux v. Freed*, 53 Cal.2d 512, 522, 2 Cal.Rptr. 265, 348 P.2d 873 (1960) and *Nelson v. Abraham*, 29 Cal.2d 745, 751, 177 P.2d 931 (1947). These cases merely recite the well established rule that partners, as fiduciaries, may not take advantage of each other and owe each other "the highest degree of good faith and honest dealing." *Bastjan v. Bastjan*, 215 Cal. 662, 12 P.2d 627 (1932), a divorce case, merely compares the rights and duties of spouses *inter se* to those of partners.

A fourth case does not appear to support the *Ragsdale* court's conclusion. In *Leff v. Gunter*, 33 Cal.3d 508, 514, 189 Cal.Rptr. 377, 658 P.2d 740 (1983), the court held that, where a partnership was formed to acquire land, an individual partner who acquired the land for his own sole benefit held the property as trustee for the benefit of his partner, even though he paid for it with his own money. This sounds suspiciously like a trust created after the wrongdoing has occurred. As discussed above, such a trust would not be sufficient for purposes of 11 U.S.C. § 523(a)(4). By contrast, in *Llewelyn v. Levi*, 157 Cal. 31, 106 P. 219 (1909), the court stated that: "A partner has no right to deal with partnership property other than for the sole bene-

---

7. In *Pepper v. Litton*, 308 U.S. 295, 306, 60 S.Ct. 238, 84 L.Ed. 281 (1939), the Supreme Court stated that a director and controlling shareholder holds their "powers in trust." 308 U.S. at 306, 60 S.Ct. 238. *See also Jones v. H.F. Ahmanson & Company*, 1 Cal.3d 93, 108, 81 Cal.Rptr. 592, 460 P.2d 464 (1969)(holding that majority shareholders are fiduciaries with respect to minority shareholders and hold their "powers in trust"). The Court finds this phrase ambiguous. It could easily mean only that these positions create a general fiduciary duty to act fairly with respect to corporate matters. *Pepper v.*

*Litton* did not involve a nondischargeability claim. The precise issue presented was whether a bankruptcy court had the power to disallow or subordinate a judgment claim against the corporation that had been procured through fraud by an individual who was an officer and director of the corporation to frustrate the collection efforts of an outside judgment creditor of the corporation. Thus, the Supreme Court was not opining on the narrower definition of fiduciary under 11 U.S.C. § 523(a)(4) or its predecessor statute under the Bankruptcy Act.

fit of the partnership...." 157 Cal. at 37, 106 P. 219. This language may more fairly be read to support the *Ragsdale* court's holding.

However, the most instructive case cited by the *Ragsdale* court is *Vai v. Bank of America National Trust & Savings Assn.*, 56 Cal.2d 329, 15 Cal.Rptr. 71, 364 P.2d 247 (1961), another divorce case. At the time *Vai* was decided, a husband normally had the sale right of control over the community property. Because of that right, the court held, a husband has a fiduciary duty to his wife with respect to the community property even during divorce proceedings: e.g., in negotiating a property settlement agreement. 56 Cal.2d at 337, 15 Cal.Rptr. 71, 364 P.2d 247. The court stated that "[t]he key factor in the existence of a fiduciary relationship lies in control by a person over the property of another." 56 Cal.2d at 338, 15 Cal.Rptr. 71, 364 P.2d 247. "[A]n individual ... is held to the duties of a fiduciary as long as he retains such control...." *Id.* Moreover, the court compared the dissolution of a marriage to the dissolution of a partnership, noting that the "necessity of exercising the highest good faith in it is especially marked between a managing partner and his copartners...." 56 Cal.2d at 339, 15 Cal.Rptr. 71, 364 P.2d 247.

In *Page v. Page*, 55 Cal.2d 192, 197, 10 Cal.Rptr. 643, 359 P.2d 41 (1961), the final case cited by the *Ragsdale* court, the court compared the fiduciary duties of a partner in control to those of a majority shareholder with respect to a minority shareholder.

The *Page* court stated that a partner "in control" had fiduciary duties to the other partners at least as great as the fiduciary duties of a majority shareholder to a minority shareholder. 55 Cal.2d at 197, 10 Cal.Rptr. 643, 359 P.2d 41.

From these cases, in particular *Vai* and *Page*, the Court concludes that, whereas the critical element of an express trust is the fiduciary's title to trust res, the critical element of a statutory trust is the fiduciary's control over the trust res. The *Ragsdale* court apparently found that, given partners' fiduciary duties to each other, a partner's ability to exercise control over the partnership property made the partner a trustee of a statutory trust for purposes of 11 U.S.C. § 523(a)(4). The Court sees no principled basis for distinguishing between a partner, on the one hand, and a director, officer, or controlling shareholder, on the other, in this respect. Therefore, the Court concludes that an officer, director, or controlling shareholder is the trustee of a statutory trust to the extent his position gives him the power to exercise control over corporate assets.[8]

Arguing for a contrary result, the Debtor noted that courts in this circuit have declined to hold that an officer, director, or controlling shareholder is a fiduciary within the meaning of 11 U.S.C. § 523(a)(4). He cited as examples *In re Hultquist*, 101 B.R. 180 (9th Cir. BAP 1989) and *In re Bangerter*, 106 B.R. 649 (Bankr.C.D.Cal. 1989). Neither of these cases persuades the Court to alter its conclusion.[9]

---

**8.** The Court notes that the State Court Complaint did not allege that the Debtor used his position as director or controlling shareholder to approve any transaction for his own benefit at the expense of the interests of Cal Micro. The self-interested transactions were made possible only by virtue of the Debtor's direct control over the assets as an officer of Cal Micro. Therefore, the Court concludes that the Plaintiffs' nondischargeable judgment against the Debtor under 11 U.S.C. § 523(a)(4) must be based solely on his role as an officer of Cal Micro.

**9.** The Debtor also cited as persuasive authority *In re Black*, 787 F.2d 503 (10th Cir.1986) (abrogated on other grounds by *Grogan v. Garner*, 498 U.S. 279, 283, n. 7, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)). *Black* is distinguishable in two respects. First, the *Black* court based its decision on its conclusion that Utah law did not impose a fiduciary duty on a majority shareholder for the benefit of a minority shareholder. 787 F.2d at 506–507. Second, as discussed below, the State Court Complaint does not allege that the Debtor committed any wrongful act by virtue of his status as majority shareholder of Cal Micro.

In *Hultquist*, the debtor, while a corporate officer of an insurance company owned by others, sold a life insurance policy on behalf of his personally owned insurance company and received a commission personally on the transaction. Among other things, the independently owned insurance company sought a nondischargeable judgment against the debtor for the amount of the commission pursuant to 11 U.S.C. § 523(a)(4). 101 B.R. at 182. The *Hultquist* court affirmed the lower court's denial of the claim. In a brief discussion of the issue, it concluded that, while Washington law made a corporate officer a fiduciary for the corporation for state law purposes, it did not make him a trustee of a pre-existing express or statutory trust as required by 11 U.S.C. § 523(a)(4). 101 B.R. at 185. The Court finds *Hultquist* unpersuasive for two reasons: (1) it was governed by Washington law and (2), as noted by the *Bangerter* court, it did not even discuss *Ragsdale v. Haller*.[10]

By contrast, the *Bangerter* court expressed surprise that the *Hultquist* court had failed to discuss *Ragsdale v. Haller* and questioned whether the two decisions could be reconciled. It concluded that they could on the ground that *Ragsdale v. Haller* involved a partner while *Hultquist* involved a corporate officer. Surprisingly, the *Bangerter* court did not consider the most obvious basis for distinguishing the two decisions: i.e., that the decisions were governed by the laws of different states.

*Bangerter* involved a controlling shareholder. The *Bangerter* court apparently concluded that the rule for a controlling shareholder should be the same as the rule for a corporate officer and held that the creditor had failed to establish a claim for nondischargeability under 11 U.S.C.

In this case, the Plaintiffs include the corporation and its sole shareholder.

**10.** Possibly, the *Hultquist* court considered *Ragsdale v. Haller* too remote to warrant discussion given the fact that it was based on California law rather than Washington law and involved a partner rather than a corporate officer. However, in the Court's view, the brevity of the discussion of this issue, coupled with the *Hultquist* court's failure to discuss *Ragsdale v. Haller* or to analyze Washington statutory and case law in the manner of *Ragsdale v. Haller* robs it of any persuasive value.

§ 523(a)(4). 106 B.R. at 654. The Court agrees with the *Bangerter* court that the same rule should apply for an officer, director, or controlling shareholder. However, as discussed above, the Court concludes that California law, as distinguished from Washington law, establishes that individuals holding these positions are fiduciaries within the meaning of 11 U.S.C. § 523(a)(4) to the extent they have the ability to exercise control over corporate assets.

## CONCLUSION

For the reasons stated above, Plaintiffs' motion will be granted, and the Debtor's cross-motion will be denied. Counsel for Plaintiffs is hereby directed to submit proposed forms of order and judgment in accordance with this decision.