**In re Gregory Dewitt CANTRELL, Debtor.**

**Gregory Dewitt Cantrell, Appellant,**

**v.**

**Cal–Micro, Inc.; Cal–Micro, Inc. Employee Stock Option Plan; The Pauline Countryman 1990 Trust, Appellees.**

BAP No. NC–01–1114–RRyK.
Bankruptcy No. 99–49461–TS.
Adversary No. 00–4136–AT.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Sept. 21, 2001.

Filed Oct. 23, 2001.

Jon R. Vaught, Day Law Corporation, Oakland, CA, for Gregory Dewitt Cantrell, appellant.

Brian Gill, Pacific Grove, CA, for Cal–Micro, Inc., Cal–Micro, Inc., Employee Option Plan, The Pauline Countryman 1990 Trust, appellees.

Before RUSSELL, RYAN and KLEIN, Bankruptcy Judges.

*OPINION*

RUSSELL, Bankruptcy Judge.

The appellees, judgment creditors of the appellant, brought an action in the appellant's bankruptcy case to determine the dischargeability of the judgment debt under § 523(a)(4).[1] The appellees filed a motion for summary judgment, and the appellant filed a cross-motion for summary judgment. The bankruptcy court granted appellees' motion for summary judgment and denied appellant's cross-motion for summary judgment based on the collateral estoppel effect of the appellees' state-court default judgment. In so ruling, the bankruptcy court determined that the appellant was a fiduciary within the meaning of § 523(a)(4). The appellant thereafter filed this appeal. We REVERSE and REMAND.

## I. FACTS

In May 1995, the appellees, Cal–Micro, Inc., Cal–Micro, Inc. Employee Stock Option Plan, and The Pauline Countryman 1990 Trust (collectively, the CMI Plaintiffs) filed a complaint in state court against the appellant Gregory Cantrell and others. The CMI Plaintiffs served the complaint on Cantrell by publication rather than by personal service. The complaint alleged twelve separate causes of action including several counts of conversion, fraud, conspiracy, constructive trust, accounting, and breach of fiduciary duty. The complaint sought recovery of compensatory damages in the aggregate amount of $1,271,985, plus additional unascertained amounts, and each of the tort-based claims against Cantrell sought punitive damages.

The claims arose from a failed stock purchase transaction. The complaint alleged that, in June 1993, defendant Omni Enterprises, Inc. ("Omni") purchased from plaintiff The Pauline Countryman 1990 Trust ("Countryman Trust") a controlling percentage of stock in co-plaintiff Cal–Micro, Inc. ("CMI"). The complaint further alleged that Cantrell and another individual named Marvin Wilcher were officers, directors and/or sole stockholders of Omni, and that Cantrell and Wilcher also were officers, directors and/or majority stockholders of CMI, while Omni held the CMI stock. According to the complaint, by August 1994, Omni had defaulted on payments owed under the stock purchase agreement, so the agreement was rescinded and the CMI stock was returned to the Countryman Trust.

The Complaint further alleged that, as officers and/or directors of CMI, and as the alter egos of Omni (the controlling stockholder of CMI), Cantrell and Wilcher

---

**1.** Unless otherwise indicated, all chapter, section, and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330, and the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

owed to plaintiffs fiduciary duties which they breached. According to the complaint, Cantrell and Wilcher engaged in the following conduct in contravention of their fiduciary duties:

A. Expropriated and converted to their own use and purposes ... corporate funds and assets of plaintiff Cal–Micro, Inc. . . .

B. Made unauthorized loans of corporate funds and assets of plaintiff Cal–Micro, Inc to themselves and to the Defendant Corporations ...

C. Made and used extensions of credit, credit accounts credit cards of plaintiff Cal–Micro, Inc to procure goods and services for themselves and the Defendant Corporations ...

D. Failed to use the corporate funds, income and accounts receivable of plaintiff Cal–Micro, Inc. for the payment of said plaintiff's operational expenses, accounts payable, payroll expenses, and expenses of taxes and insurance. . . .

In April 1996, the CMI Plaintiffs obtained a default judgment against Cantrell for $1,271,985 in compensatory damages and $10,000 in punitive damages, plus attorney's fees, interest and costs. The default judgment neither specified the cause(s) of action on which it was based nor made any express findings of fact concerning the allegations contained in the complaint.

In April 1998, Cantrell filed a motion to set aside the default judgment. In the motion to set aside, Cantrell claimed he was never personally served with the summons and complaint; rather, the CMI Plaintiffs had obtained leave to serve the complaint on Cantrell by publication. In their opposition to the motion to set aside,

the CMI Plaintiffs argued that Cantrell's motion to set aside was time barred. According to the opposition, Cantrell admitted to receiving actual notice of the default judgment in November 1997, when there was still enough time to bring a timely motion, but Cantrell waited to bring his motion until April 1998, after the two-year limitations period had run for bringing his motion to set aside. The state court denied Cantrell's motion to set aside.

In December 1999, Cantrell filed a voluntary chapter 7 bankruptcy petition, and in March 2000, the CMI Plaintiffs filed their complaint to determine the dischargeability of their state-court default judgment against Cantrell under §§ 523(a)(2) and (4).[2] The CMI Plaintiffs thereafter filed their motion for summary judgment, and Cantrell filed a cross-motion for summary judgment.

On February 13, 2001, the bankruptcy court issued its Memorandum of Decision on the cross-motions for summary judgment. The court determined that the same issues presented by the dischargeability action were decided in the state-court lawsuit and gave the CMI Plaintiffs' default judgment preclusive effect. The bankruptcy court therefore granted the CMI Plaintiffs' motion for summary judgment and denied Cantrell's cross-motion for summary judgment.

In making its determination, the bankruptcy court relied heavily on *Ragsdale v. Haller*, 780 F.2d 794 (9th Cir.1986). Based largely on *Ragsdale*, the court concluded that, as a matter of California law, Cantrell's alleged position as a director, officer or controlling shareholder of CMI made Cantrell the type of fiduciary covered by § 523(a)(4):

---

**2.** The CMI Plaintiffs subsequently conceded that their state court complaint did not allege the requisites for a claim under § 523(a)(2),

and agreed to dismissal of their § 523(a)(2) claim.

The *Ragsdale* court apparently found that, given partners' fiduciary duties to each other, a partner's ability to exercise control over the partnership property made the partner a trustee of a statutory trust for purposes of 11 U.S.C. § 523(a)(4). The Court sees no principled basis for distinguishing between a partner, on the one hand, and a director, officer, or controlling shareholder, on the other, in this respect. Therefore, the Court concludes that an officer, director, or controlling shareholder is the trustee of a statutory trust to the extent his position gives him the power to exercise control over corporate assets.

*In re Cantrell,* 258 B.R. 756, 764 (Bankr. N.D.Cal.2001).

The bankruptcy court thereafter entered a judgment of nondischargeability against Cantrell, and Cantrell timely filed this appeal.

## II. ISSUES

A. Whether the bankruptcy court properly gave collateral estoppel effect to the CMI Plaintiffs' state court default judgment.

B. Whether the bankruptcy court properly concluded that the appellant was a "fiduciary" within the meaning of § 523(a)(4) by virtue of his position as an officer, director and/or majority shareholder.

## III. STANDARD OF REVIEW

■ We review a summary judgment *de novo.* *In re Baldwin,* 245 B.R. 131, 134 (9th Cir. BAP 2000), *aff'd,* 249 F.3d 912 (9th Cir.2001).

■ We also review *de novo* the bankruptcy court's decision on the availability of collateral estoppel. *Id.*

■ Whether a person is a "fiduciary" within the meaning of § 523(a)(4) is a question of law, which we also review *de novo.* *In re Stanifer,* 236 B.R. 709, 713 (9th Cir. BAP 1999).

## IV. DISCUSSION

### A. *Preclusive Effect of Default Judgment*

■■ Collateral estoppel, or issue preclusion, applies in dischargeability proceedings. *Grogan v. Garner,* 498 U.S. 279, 284 & n. 11, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). In determining the preclusive effect of a state court judgment, 28 U.S.C. § 1738 requires federal courts, as a matter of full faith and credit, to apply that state's collateral estoppel principles. *In re Nourbakhsh,* 67 F.3d 798, 800 (9th Cir.1995).

■ Under California law, five "threshold requirements" must be met for collateral estoppel to apply:

First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding.... The party asserting collateral estoppel bears the burden of establishing these requirements.

*In re Harmon,* 250 F.3d 1240, 1245 (9th Cir.2001) (quoting *Lucido v. Superior Court,* 51 Cal.3d 335, 341, 272 Cal.Rptr. 767, 795 P.2d 1223 (1990)). If all of the threshold requirements are met, the court then must decide whether application of collateral estoppel would "further the policy interests underlying the doctrine." *Harmon,* 250 F.3d at 1247, n. 6 (citing

*Lucido,* 51 Cal.3d at 342–43, 272 Cal.Rptr. 767, 795 P.2d 1223).

When a party seeks to invoke collateral estoppel based on a default judgment, California mandates two threshold requirements. First, for a default judgment to have preclusive effect, the defaulting defendant must have had a "full and fair opportunity" to litigate the issues determined by the default judgment. *Harmon,* 250 F.3d at 1247, n. 6 (citing *Williams v. Williams,* 36 Cal.2d 289, 295, 223 P.2d 248 (1950)). Accordingly, a defaulting defendant will not be precluded from relitigating such issues unless the defendant " 'has been personally served with summons or has actual knowledge of the existence of the litigation.' " *Harmon,* 250 F.3d at 1247 (quoting *Williams,* 36 Cal.2d at 295, 223 P.2d 248).

Second, in the default judgment context, the determination of an issue will be given preclusive effect only where the court in the prior action rendered an "express finding" on that issue, or where this express finding requirement has been waived. *Harmon,* 250 F.3d at 1247–48. The express finding requirement is deemed waived where the court in the prior proceeding implicitly and necessarily decided the issue. *Id.* at 1248.

In this case, Cantrell did not have a full and fair opportunity to litigate in the state court action. The record reflects that the CMI Plaintiffs did not personally serve Cantrell with their Complaint, nor did Cantrell have actual knowledge of the litigation before the default judgment was entered. Neverthe-

less, the CMI Plaintiffs argue that Cantrell was aware of the April 1996 default judgment by no later than November 1997, while there was still time to file a timely motion to set aside the default judgment.[3] The CMI Plaintiffs claim that, because Cantrell knew of the default judgment in time to bring a motion to set aside, he had actual knowledge of the litigation for purposes of the collateral estoppel threshold requirements. We disagree.

The express purpose of the actual knowledge requirement is to ensure that the defaulting defendant had a full and fair opportunity to litigate the allegations made in the complaint. Cantrell did not have a full and fair opportunity to litigate when he was not personally served with process, and when he did not know about the litigation until after the default judgment had been entered. *See Williams,* 36 Cal.2d at 295, 223 P.2d 248 (stating that the defaulting defendant must learn of the litigation before entry of the default judgment). Neither knowledge after the fact, nor an unconsummated offer to set aside the default judgment, constituted knowledge of the litigation for purposes of satisfying the actually litigated requirement.

In sum, while the CMI Plaintiffs indisputably obtained a valid and enforceable state-court judgment against Cantrell, any issues determined by that judgment duly may be relitigated in other proceedings that raise the same issues because the CMI Plaintiffs have not shown that Cantrell had a full and fair opportunity to litigate those issues for collateral estoppel purposes.[4]

---

3. The CMI Plaintiffs also argue that they offered to stipulate with Cantrell to set aside the default judgment (but that Cantrell refused to so stipulate) and that this offer either satisfied or waived the actually litigated requirement. We disagree. The record does not reveal what conditions, if any, were imposed upon

the CMI Plaintiffs' set aside offer. If the CMI Plaintiffs unconditionally sought to set aside the default judgment, they presumably could have done so without the consent or participation of Cantrell.

4. Cantrell further contends that collateral estoppel also does not apply here because the

■ Accordingly, the bankruptcy court erred in granting summary judgment in favor of the CMI Plaintiffs based on the preclusive effect of the state-court default judgment.[5]

### B. Fiduciary Status Under § 523(a)(4)

Section 523(a)(4) excepts from discharge a debt "for fraud or defalcation while acting in a fiduciary capacity."

■ The definition of "fiduciary capacity" under § 523(a)(4) is governed by federal law. *See In re Gergely*, 110 F.3d 1448, 1450 (9th Cir.1997) (quoting *Ragsdale v. Haller*, 780 F.2d 794, 796 (9th Cir.1986)).

■ Federal law narrowly construes the term "fiduciary" for purposes of § 523(a)(4). Only relationships arising from express or technical trusts qualify as fiduciary relationships under § 523(a)(4). *In re Lewis*, 97 F.3d 1182, 1185 (9th Cir. 1996) (citing *Ragsdale*, 780 F.2d at 796); *In re Stanifer*, 236 B.R. 709, 713–14 (9th Cir. BAP 1999).

■ Consequently, broader definitions of fiduciary relationships—definitions that include relationships of confidence, trust and good faith—are inapplicable in the dischargeability context. *See Lewis*, 97 F.3d at 1185; *In re Baird*, 114 B.R. 198, 202 (9th Cir. BAP 1990). Also inapplicable are fiduciary relationships arising from implied or constructive trusts, and trusts *ex maleficio* (trusts created merely on the basis of wrongful conduct). *Stanifer*, 236 B.R. at 714 (citing *In re Short*, 818 F.2d 693, 695 (9th Cir.1987)). The trust must arise "before and without reference to the wrongdoing that caused the debt." *Id.* (quoting *Lewis*, 97 F.3d at 1185).

■ While the definition of "fiduciary capacity" under § 523(a)(4) is governed by federal law (*see supra*), we must look to state law to determine whether the requisite trust relationship exists. *Ragsdale*, 780 F.2d at 796; *Stanifer*, 236 B.R. at 714. A trust under California law may be formed by express agreement, by statute or by case law. *Stanifer*, 236 B.R. at 714. *See also Ragsdale*, 780 F.2d at 796.[6]

■ Relying heavily on *Ragsdale*, the bankruptcy court in this case concluded that a person who is an officer, director or

"express finding requirement" has neither been satisfied nor waived. The CMI Plaintiffs counter that the requirement has been waived because the state court default judgment implicitly and necessarily decided that Cantrell had breached his fiduciary duties to the CMI Plaintiffs. However, we do not need to reach this issue. As set forth above, collateral estoppel does not apply here because Cantrell did not have a full and fair opportunity to litigate. Moreover, as explained below, the state court complaint did not sufficiently allege for collateral estoppel purposes that Cantrell was a fiduciary for purposes of § 523(a)(4). Consequently, the state court default judgment could not possibly have decided, implicitly or otherwise, that Cantrell breached any fiduciary duty within the meaning of § 523(a)(4).

5. Citing Rule 8006, the CMI Plaintiffs contend that Cantrell is barred from raising on appeal the issue of whether the default judgment is entitled to collateral estoppel effect because that issue was not identified in Cantrell's statement of issues on appeal. We disagree. *See In re Bishop, Baldwin, Rewald, Dillingham & Wong*, 104 F.3d 1147 (9th Cir.1997) (holding that failure to include an issue in statement of issues did not bar the appellant from raising the issue in its opening brief).

6. In their summary judgment motion, the CMI Plaintiffs argued that Cantrell was the trustee of a trust created by statute as well as by case law. In its Memorandum Decision, the bankruptcy court rejected the argument that a trust had been created by statute. On appeal, the CMI Plaintiffs apparently have abandoned this argument. Their opening brief relied exclusively on case law to argue that Cantrell was the trustee of a trust.

controlling shareholder of a corporation, is a trustee of a statutory trust under California law and, therefore, such person qualifies as a fiduciary for purposes of § 523(a)(4).

*Ragsdale* held that "California has made all partners trustees over the assets of the partnership," so California partners are fiduciaries for purposes of § 523(a)(4). *Ragsdale*, 780 F.2d at 796–97. The *Ragsdale* court particularly relied on statements made in several California Supreme Court cases that, according to the *Ragsdale* court, raised the duties of partners beyond those expressly required by California statute. *Id.* at 796.

The bankruptcy court below stated that it saw "no principled basis for distinguishing between a partner, on the one hand, and a director, officer, or controlling shareholder, on the other, in this respect." *In re Cantrell*, 258 B.R. 756, 764 (Bankr. N.D.Cal.2001). However, the key question is not whether the bankruptcy court, or any other federal court for that matter, sees a basis, principled or otherwise, for distinguishing between partners and corporate principals; rather, the key issue is whether California law makes such a distinction. We conclude that it does.

Whereas California partnership law provided a basis for the *Ragsdale* court to conclude that partners are trustees of a statutory trust, California corporations law provides no similar basis under which we can conclude that corporate principals are trustees. The California Supreme Court case of *Bainbridge v. Stoner*, 16 Cal.2d 423, 106 P.2d 423 (1940), is directly on point. In *Bainbridge*, the plaintiffs, as minority shareholders of a corporation, filed a complaint against B.L. Stoner and others. The complaint alleged that Stoner was the president and a director of the corporation, and that "he and his associates own[ed] a majority of its stock." *Id.*

at 425–26, 106 P.2d 423. Stoner successfully demurred to the complaint, and the plaintiffs appealed. On appeal, the plaintiffs argued that the statute of limitations, which supposedly had run before the filing of their complaint, did not apply to their lawsuit because their complaint stated a cause of action to declare a trust and for an accounting. According to the plaintiffs, a trust claim "does not lapse while the trust continues and the statute does not begin to run until there is knowledge of a breach or the trust is terminated." *Id.* at 426–27, 106 P.2d 423.

In the process of rejecting the plaintiffs' argument, the *Bainbridge* court explained:

> One who is a director of a corporation acts in a fiduciary capacity, and the law does not allow him to secure any personal advantage as against the corporation or its stockholders.... However, strictly speaking, the relationship is not one of trust, but of agency....

*Id.* at 427–28, 106 P.2d 423 (citations omitted). *See also Bancroft–Whitney Co. v. Glen*, 64 Cal.2d 327, 345–46 & n. 10, 49 Cal.Rptr. 825, 411 P.2d 921 (1966) (stating that corporate officers and directors are "technically not trustees," and referring to agency law in analyzing a corporate officer's duties). *Accord GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc.*, 83 Cal.App.4th 409, 417, 99 Cal. Rptr.2d 665 (2000).

The *Bainbridge* court therefore concluded that the plaintiffs had not alleged the existence of a trust by virtue Stoner's position as an officer, director and controlling shareholder; rather, the plaintiffs, at best, had alleged a constructive trust cause of action, which was barred by the statute of limitations. *Id.* at 428–29, 106 P.2d 423.

Thus, we cannot conclude in the face of *Bainbridge* that California law recognizes officers, directors or controlling sharehold-

ers as trustees of either an express or a statutory trust.[7]

We reached the same conclusion under Washington law in *In re Hultquist*, 101 B.R. 180 (9th Cir. BAP 1989). *Hultquist* held that, under Washington law, a corporate officer is not a trustee of either an express or statutory trust, so the debtor was not a fiduciary for purposes of § 523(a)(4). The bankruptcy court, here, distinguished *Hultquist* because it was based on Washington law rather than California law. While *Hultquist* is not directly on point, neither California nor Washington corporate law make corporate principals trustees of express or statutory trusts.

Three California cases cited by the CMI Plaintiffs appear to characterize corporate principals as trustees.[8] However, the characterization in those cases arguably is dictum: those cases easily could have been decided in the same manner without referring to corporate principals as trustees.[9] Even if the characterization were considered necessary to the holdings, two of the three cases pre-date *Bainbridge*, which expressly and necessarily rejected such a characterization. The third case, a recent California Court of Appeal case, neither referred to nor discussed *Bainbridge*. *See Interactive Multimedia Artists, Inc. v. Superior Court*, 62 Cal.App.4th 1546, 73 Cal. Rptr.2d 462 (1998). To the extent *Interactive* is inconsistent with *Bainbridge*, a California Supreme Court case, we must follow *Bainbridge* and not *Interactive*.[10]

To ignore the distinction between the trustee of a technical trust and a corporate principal would do violence to the narrow construction of the term "fiduciary" that the United States Supreme Court established in the bankruptcy discharge context over 150 years ago. *See Chapman v. Forsyth*, 43 U.S. 202, 208, 2 How. 202, 11

---

7. While *Bainbridge* focused on whether an express trust had been pled, its holding also implicitly precluded the possibility that a statutory trust had been pled. *Bainbridge* affirmed the lower court's order sustaining Stoner's demurrer based on the conclusion that plaintiff's complaint had alleged a cause of action for constructive trust, and that the limitations period for bringing an action based on a constructive trust had run before the filing of the complaint. *Id.* at 429, 106 P.2d 423. If a statutory trust had been sufficiently pled, the *Bainbridge* court presumably could not have affirmed the order on the demurrer based on the running of the constructive trust limitations period.

8. *Farmers' & Merchants' Bank of Los Angeles v. Downey*, 53 Cal. 466, 468 (1879) (holding that a bank officer, who obtained for his own benefit a profit participation in a real estate venture in exchange for loaning bank money, misappropriated a corporate asset); *Interactive Multimedia Artists, Inc. v. Superior Court*, 62 Cal.App.4th 1546, 1555–56, 73 Cal.Rptr.2d 462 (1998) (holding that a majority shareholder was not entitled to a jury trial on breach of fiduciary duty claim because claim sounded

in equity); *Poor v. Yarnell*, 28 Cal.App. 714, 715, 153 P. 976 (1915) (affirming writ of mandate directing defendants, as officers and agents of the corporation, to permit plaintiff shareholder to inspect certain corporate records).

9. Indeed, the court in *Poor v. Yarnell*, 28 Cal.App. 714, 153 P. 976, interchangeably refers to officers and directors as both "trustees" and as "agents." 28 Cal.App. at 715, 153 P. 976.

10. Although not cited by either side, we recently held in *In re Jacks*, 266 B.R. 728 (9th Cir. BAP 2001), that "California's Corporation Code provides a remedy for an insolvent corporation's director's violations of fiduciary duties to creditors," which could be actionable under § 523(a)(4). *Id.* at 737. We also noted: "Because a director's fiduciary duties to creditors do not arise until the corporation is insolvent, the timing of the insolvency is critical." *Id.* at 738. Since the issue of insolvency was not raised by the CMI Plaintiffs in the state court complaint, and because they are not creditors, *Jacks* is not relevant to the case before us.

L.Ed. 236 (1844) ("The [bankruptcy] act speaks of technical trusts, and not those which the law implies from the contract."). This narrow construction has been reiterated on many occasions since *Chapman,* under each of the applicable dischargeability statutes that have been enacted since *Chapman. See e.g. In re Lewis,* 97 F.3d 1182, 1185 (9th Cir.1996). *See also Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 333, 55 S.Ct. 151, 79 L.Ed. 393 (1934) (listing supreme court cases that have upheld the narrow construction).

Moreover, *Chapman's* reasoning for adhering to a narrow construction is just as cogent today as it was 150 years ago:

> If the act embrace such a debt, it will be difficult to limit its application. It must include all debts arising from agencies; and indeed all cases where the law implies an obligation from the trust reposed in the debtor. Such a construction would have left but few debts on which the law could operate. In almost all the commercial transactions of the country, confidence is reposed in the punctuality and integrity of the debtor, and a violation of these is, in a commercial sense, a disregard of a trust. But this is not the relation spoken of in the first section of the act.

*Chapman,* 43 U.S. at 208.

## C. *Cantrell's Cross–Motion for Summary Judgment*

As set forth above, Cantrell filed a cross-motion for summary judgment, which the bankruptcy court denied. The cross-motion is supported by Cantrell's own declaration in which he asserted that he did not expropriate any corporate funds, did not make any unauthorized loans or transfers of corporate funds, and did not otherwise appropriate or embezzle for his own benefit or for the benefit of any other person or entity.

 In opposition to Cantrell's cross-motion, the CMI Plaintiffs relied exclusively on their theory of collateral estoppel based on the state court default judgment.[11] Other than Cantrell's titles and positions as an officer, director and controlling stockholder of CMI, which we have concluded were insufficient to make Cantrell a § 523(a)(4) fiduciary, the CMI Plaintiffs neither alleged, nor provided any evidence of, any alternative basis under which the bankruptcy court could conclude that Cantrell was a § 523(a)(4) fiduciary.[12]

11. While the record is not entirely clear, in conjunction with their opposition to Cantrell's cross-motion, the CMI Plaintiffs apparently asked the bankruptcy court to take judicial notice of the same state court pleadings on which the CMI Plaintiffs relied in support of their summary judgment motion.

12. The CMI Plaintiffs suggested in their brief that Cantrell alternatively qualified as a § 523(a)(4) fiduciary by virtue of his alleged control over the Cal–Micro ESOP. Even if Cantrell arguably could qualify as a fiduciary with respect to the Cal–Micro ESOP, the CMI Plaintiffs did not allege any misappropriation or failure to account for ESOP assets. The CMI Plaintiffs only alleged diminution in the value of Cal Micro stock held by the ESOP. The diminution in value of ESOP-held stock is insufficient to state a claim under § 523(a)(4). *In re Hemmeter,* 242 F.3d 1186, 1191 (9th Cir.2001).

The CMI Plaintiffs also suggested in their brief that the Rooker–Feldman doctrine alternatively precludes Cantrell from litigating against the CMI Plaintiffs' § 523(a)(4) claim. However, the Rooker–Feldman doctrine only applies if the subject issues already have been determined by a state court. *See e.g. District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 476, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). For the reasons set forth above, we conclude that the Rooker–Feldman doctrine does not apply here, because the § 523(a)(4) issues were not determined by the state-court default judgment.

Consequently, summary judgment should have been entered in favor of Cantrell.

## V. CONCLUSION

For the reasons set forth above, the bankruptcy court erred in granting summary judgment in favor of the CMI Plaintiffs based on the preclusive effect of the CMI Plaintiffs' state-court default judgment. The bankruptcy court should have granted Cantrell's cross-motion for summary judgment.

Accordingly, the bankruptcy court's summary judgment in favor of the CMI Plaintiffs is REVERSED, and this matter is hereby REMANDED to the bankruptcy court for entry of summary judgment in favor of Cantrell.

KLEIN, Bankruptcy Judge, dissenting in part.

I join the majority opinion on the question of issue preclusion following a California default judgment. The recent Ninth Circuit decision, *Harmon v. Kobrin (In re Harmon)*, 250 F.3d 1240 (9th Cir.2001), compels the conclusion that the California default judgment in question does not have issue preclusive effect.

The balance of the decision is an unnecessary advisory opinion on a question that is far less settled than the majority suggests. Indeed, in my view, two conflicting lines of decisions regarding 11 U.S.C. § 523(a)(4), which have not yet been reconciled, leave the entire subject in disarray.

The record developed at the trial that should occur on remand would affect the analysis of the defendant's putative fiduciary obligations in light of § 523(a)(4). It is premature and not appropriate to decide this important question on an incomplete summary judgment record at this stage of the litigation. Accordingly, I DISSENT.